UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TERRY GREATHOUSE                                                                    PLAINTIFF


v.                                                                    CIVIL ACTION NO. 3:02-CV-508-S


JOSEPH W. WESTFALL,                                                            DEFENDANT
Secretary of the Army

## MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment by the defendant, Joseph

W. Westfall, Secretary of the Army.  This case involves the plaintiff's claims of employment

discrimination under the Rehabilitation Act of 1973, as amended (29 U.S.C. §791, *et. seq.*).  For the

reasons set forth below, the court will grant the defendant's motion for summary judgment.

## FACTS

In May of 1979, the plaintiff, Terry Greathouse ("Mr. Greathouse"), began working for the

United States Corps of Engineers as a laborer in the Louisville District ("District").  He held that

position until 1981 when he became a lock and dam operator at the Corps of Engineers' Cannelton

location.  In 1995, Mr. Greathouse began having repeated conflicts with a co-worker named Tim

Stewart ("Mr. Stewart"). The District's crisis intervention team investigated that situation, finding

both individuals at fault.  The lockmaster, Anthony Davis, issued a memorandum stating that, for

at least eight weeks, Mr. Greathouse and Mr. Stewart would not work together on a shift and that

they would be escorted to their vehicles when they arrived and departed from work. The

memorandum indicated that one or both employees may be terminated if the situation did not

1

improve.  Mr. Greathouse and Mr. Stewart both sought counseling.  Mr. Greathouse was diagnosed with depression, adjustment disorder and panic attacks.  On March 14, 1996, Mr. Greathouse filed a federal tort claim alleging that the District had subjected him to a hostile work environment.

On April 15, 1996, Lockmaster Davis scheduled Mr. Greathouse and Mr. Stewart for the same shift.  Mr. Stewart agreed while Mr. Greathouse refused.  The District then offered Mr. Greathouse reassignment to a lower graded position, with retained pay, at the Markland location.  Mr. Greathouse rejected this offer.  He claims that he refused because it was a lower position requiring more travel and because he believed the District was retaliating against him for his refusal to work with Mr. Stewart.

Mr. Greathouse subsequently applied for a position of lock and dam equipment mechanic leader at the Green River location.  He was the only applicant.  The selecting official,  Roger Greene, readvertised the position on June 26, 1996.  This time, two people applied - Mr. Greathouse and Alan Perdue. The District maintains that Mr. Perdue was selected because of his superior maintenance experience.  Lockmaster Davis' secretary claims she overheard a conversation between he and Mr. Greene in which they discussed Mr. Greathouse's "disability."

On July 29, 1996, Mr. Greathouse initiated the administrative process of filing an equal employment opportunity (EEO) complaint regarding his non-selection for the Green River job.  By letter dated September 5, 1996, District Manager Gene Allsmiller proposed that Mr. Greathouse be removed for inability to perform his duties since he refused to work with Mr. Stewart.  Kenneth Mathews, Chief of Operations Division for the District, issued his decision on the proposal, deciding instead to reassign Mr. Greathouse to the McAlpine lock and dam in Louisville.  Mr. Greathouse initiated the EEO process of filing a complaint regarding this reassignment on January 10, 1997.

2

The Department of Defense Civilian Personnel Managment Service Office of Complaint Investigations (OCI) found that the District had not discriminated against Mr. Greathouse in the Green River selection.  The OCI then issued a second report finding no discrimination with regard to Mr. Greathouse's reassignment to McAlpine.  The EEOC issued a recommended decision in Mr. Greathouse's Green River complaint, determining there was no evidence that the selecting official knew of Mr. Greathouse's depression.  On May 12, 1998, the Army issued its final agency action, adopting that recommendation.  Mr. Greathouse unsuccessfully appealed this decision.  On July 14, 1998, the Army issued its final agency action on the McAlpine claim, adopting the EEOC's recommendation that Mr. Greathouse's purported disability did not rise to the level of "substantially limiting."   Mr. Greathouse also unsuccessfully appealed this decision. In February of 1999, Mr. Greathouse began the application process for disability retirement, which became effective January 29, 2000.  Mr. Greathouse has since filed the instant lawsuit, in which the Green River and McAlpine complaints have been consolidated.

<u>DISCUSSION</u>

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,*

3

*Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

The court will consider Mr. Greathouse's discrimination claims *de novo*. *See* 5 U.S.C., §7703(c); §7702(e)(3); *Ballard v. Tennessee Valley Auth.,* 768 F.2d 756, 757 (6th Cir.1985).

A. Disability Discrimination

Mr. Greathouse seeks relief under the Rehabilitation Act,[1] which prohibits discrimination against disabled persons. Section 504 provides:

> [n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ."

29 U.S.C. §794(a). There is no dispute that the Department of the Army, a federal agency, is a proper defendant. Mr. Greathouse bears the burden of establishing the other three elements. His *prima facie* case consists of showing that he (1) is an individual with a disability, (2) is otherwise qualified to fulfill the requirements of his job, and (3) suffered an adverse employment action solely

---

[1] Both the Rehabilitation Act and the Americans with Disabilities Act (ADA) prohibit discrimination against disabled persons. Courts have held that the analysis under one "roughly parallels" the other. *See Monette v. Electric Data Sys. Corp.,* 90 f.3d 1173, 1177 (6th Cir. 1996). "Because the standards under both the acts are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. Ohio,* 104 F.3d 803, 807 (6th Cir. 1997). Therefore, this court will rely upon cases falling under the ADA as well as the Rehabilitation Act in the following discussion.

4

because of his disability. *See Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir. 1988).

 *1. Mr. Greathouse is not disabled within the meaning of the Rehabilitation Act.*

With regard to element (1) above, the Rehabilitation Act explicitly defines an "individual with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. §705 (20)(B).

Mr. Greathouse identifies his disabilities as sleep apnea, chronic depression, irritable bowel syndrome, judgment disorders and panic attacks. He has substantiated these claims through doctors' statements. However, "[d]etermining whether a physical or mental impairment exists is only the first step in determining whether or not an individual is disabled. Many impairments do not impact an individual's life to the degree that they constitute disabling impairments." 29 C.F.R. pt. 1630, App. §1630.2(i) (2001). *See also Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002) ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment.").

To qualify as disabling, the impairment must substantially limit one or more major life activities. As an initial matter, it is necessary to understand what is meant by the term "major life activity." The EEOC regulations shed light on this by stating:

> "major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. This list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching.

29 C.F.R. pt. 1630, App. §1630.2(i) (2001). Mr. Greathouse asserts that his disabilities "create

difficulty for him in "working, communicating, attention to details, [and] sleeping." *Plaintiff's Response* (DN 29), p. 9.  Working and sleeping qualify as major life activities, but concentration does not.  *See Doren v. Battle Creek Health System*, 187 F.3d 595, 597 (6th Cir. 1999); *Pack v. Kmart Corp.,* 166 F.3d 1300, 1305 (10th Cir. 1999).  Nonetheless, Mr. Greathouse has failed to provide any evidence that the impairments *substantially limit* him in the performance of any of these activities.

With regard to working, the term substantially limits means: "significantly restricted in the ability to perform either of class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Doren,* 187 F.3d at 597. Mr. Greathouse insists that he could not work normally in his position as a lock and dam operator because Mr. Stewart caused him severe anxiety.  This certainly does not disqualify him from a broad range of jobs in various classes.  In fact, Mr. Greathouse has successfully held a number of jobs since his retirement.  He has been a substitute teacher, an administrator of an industrial training consortium, a welder, an automobile salesman, a glass salesman and a factory helper.  Mr. Greathouse's problems stemmed from his interaction with a single individual who he claims exacerbated his emotional problems. However, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*  In a recent unpublished opinion, the Sixth Circuit Court of Appeals found that a plaintiff was not substantially limited when his impairments were allegedly caused by the stress of working with two particular supervisors.  *See Cartwright v. Lockheed Martin Utility Services, Inc.*, 40 Fed.Appx. 147, 154 (6th Cir. 2002). Similarly, Mr. Greathouse's ailments did not substantially limit his ability to work.  This court agrees with the administrative law judge's finding that Mr. Greathouse's "inability to work

6

with a single individual in a single work environment of a single employer is insufficient evidence to establish that [he] is substantially limited in the major life activity of working." *See AR I -EEOC Recommended Decision, EEOC No. 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X*, Aug. 11, 1998, p.4. Likewise, his communication problems with Mr. Stewart did not substantially limit him in a major life activity.

Mr. Greathouse also claims his disabilities substantially limited him in the major life activity of sleeping. The Sixth Circuit Court of Appeals has held that some sleep deprivation simply lacks the kind of severity required of an ailment to qualify as a substantial limitation. *See Boerst v. Gen. Mills Operations, Inc.*, 25 Fed.Appx. 403, *cert denied*, 535 U.S. 1097, 122 S.Ct. 2294, 152 L.Ed.2d 1052 (2002). Likewise, Mr. Greathouse's sleep problems do not rise to the requisite level. Mr. Greathouse fails to sufficiently explain his sleep difficulties and how they affect his life activities. Instead, he urges the court to look cumulatively at his disabilities as creating a "total disability," which affects his ability to work and interact with others. *Plaintiff's Response* (DN 29), p. 12-13. The court finds this unpersuasive. The aggregate effect of his ailments, each of which is not substantially limiting, simply does not qualify him as disabled under the relevant statutory language.

Mr. Greathouse has not demonstrated that he had a record of having a disabling impairment or that he was regarded as having such an impairment. "A record of impairment means an individual has 'a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.' " *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir.2002) (quoting 28 C.F.R. § 35.104(3)). "Regardless of whether [the plaintiff] is proceeding under a classification or misclassification theory, the record-of-impairment standard is satisfied only if she actually suffered a physical impairment that substantially limited one or more of her major life activities." *Edwards v. Ford Motor Co.*, 218 F.Supp.2d 846, 851 (W.D. Ky 2002)

7

(quoting *Hilburn v. Murata Elec.'s N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir.1999)). In the instant case, the record is devoid of any evidence indicating that his ailments substantially limited him in any major life activity.  However, he claims that the District must have "considered" him disabled because his supervisor refrained from assigning him to the same shift as Mr. Stewart.  It is undisputed that these men had a contentious relationship, which frequently escalated into confrontations.  This situation disrupted the workplace to the extent that the crisis intervention team conducted an investigation, the results of which indicated that both men were at fault.  The District was not "accommodating" Mr. Greathouse's individual "disability."  Rather, it simply allowed time for the conflict to subside and for the employees to correct the situation.  The temporary schedule change resulted directly from the contentious interaction between the two co-workers, not from Mr. Greathouse's emotional problems.[2]

Furthermore, "[t]o hold that an employer perceives a troubled employee disabled . . . by making an offer to accommodate such an employee 'would unnecessarily inhibit employers from any inquiry regarding the status of behavior on the part of an employee that an employer may perceive as inappropriate for the employment environment."  *Summers v. Middleton & Reutlinger, PSC*, 214 F.Supp.2d 751, 756 (W.D. Ky. 2002) (internal citations omitted).  *See also Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir.1996) ("While the defendant may have perceived that [the plaintiff's] health problems were adversely affecting her job performance, there

---

[2] The memorandum stated that the schedule change would be in force only "until this issue is resolved." Lockmaster Davis instructed Mr. Greathouse and Mr. Stewart to "learn how to deal with this situation in a professional and nonaggressive manner,"indicating that the problem was not attributable to just one employee. *See AR I 0393 - Memorandum to Terry Greathouse from Lockmaster Davis*, Oct. 18, 1995. The memorandum clearly indicates that the scheduling change was temporary and was being implemented merely to allow the conflict to subside.  It was not an accommodation for any purported disability.

is no evidence that defendant regarded [the plaintiff] as being unable to care for herself or to perform all the duties of her job."). Thus, even if this temporary rescheduling were a "reasonable accommodation," the mere existence of such a provision by the District is insufficient to satisfy the "regarded as" test.

Mr. Greathouse has not established that he was an individual with a disability within the meaning of the statutory language, that he had a record of having such an impairment or that he was regarded as having one. He has failed to satisfy the first essential element of his *prima facie* case. Thus, his disability claim cannot proceed.

### 2. *The* McDonnell Douglas *Framework*

If a plaintiff cannot establish the traditional *prima facie* case, he may rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to establish discrimination. Under this model, Mr. Greathouse must first show that (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified; and (4) he was treated differently than similarly situated employees for the same or similar conduct. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582-83 (6th Cir.1992). Then the burden of production shifts to the Army to provide a legitimate, nondiscriminatory reason for its action. The ultimate burden of persuasion rests with Mr. Greathouse to establish that the Army's proffered reasons were merely pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). However, Mr. Greathouse has not established this alternative *prima facie* case either. As noted earlier, he failed to demonstrate that he is disabled within the meaning of the Rehabilitation Act; thus, he has not shown that he is a member of a

protected class. Additionally, he has not provided evidence of non-disabled persons who were treated more favorably in similar situations.

Even if he did meet his initial burden, the burden would simply shift to the Army to articulate a legitimate reason for its actions. The Army has met this burden by showing that Mr. Greathouse was not chosen for the Green River job because the other applicant had more relevant experience and that he was reassigned to McAlpine because he refused to work with Mr. Stewart at Cannelton. With regard to the Green River selection, several witnesses testified during the administrative proceedings, corroborating the Army's purported reason. After learning that only one person applied, the selecting officer asked four other employees why they had not applied. The selecting officer desired a larger pool of candidates and he indicated he would not be able to make a selection if only one person applied. The selecting officer also testified that the ultimate selectee had superior relevant experience. The personnel management specialist who re-advertised the Green River opening testified that the selecting officer was not required to make a selection from a list with less than three candidates. Both employees testified that they had no knowledge of Mr. Greenhouse's purported disabilities. Mr. Greathouse's first and second level supervisors also denied any attempt to influence the selection process. Both Mr. Greathouse's supervisor and the selecting officer stated that his supervisor actually gave him a *favorable* recommendation. This court agrees with the EEOC appeals decision that the Army satisfactorily "articulated legitimate nondiscriminatory reasons for not selecting" Mr. Greathouse. *See AR II* 000003 - *EEOC Appeal No. 01984880*, May 4, 2001, p.4.

Likewise, the Army has articulated a legitimate, nondiscriminatory reason for reassigning Mr. Greathouse to McAlpine. Mr. Greathouse unequivocally stated that he would not work with Mr. Stewart. The Chief of Operations for the District testified that scheduling shifts so that these two

10

employees would never work together was simply not feasible. Therefore, the only possible solution was reassignment. Lockmaster Davis testified that the temporary shift arrangement burdened the other employees who could not establish regular schedules because of the constant balancing necessary. Before granting leave to employees, the lockmaster had to overcome the additional hurdle of ensuring, not only that there was sufficient coverage, but that Mr. Greathouse and Mr. Stewart would not be scheduled together. Additionally, to avoid confrontation, the other employees had to escort Mr. Greathouse and Mr. Stewart when they were at work. This further harmed the overall work environment. The reasons articulated by the Army are sufficient to satisfy its burden.

Thus, the ultimate burden remains with Mr. Greathouse on both the Green River non-selection and the McAlpine reassignment claims. Yet, he points to neither substantial direct nor circumstantial evidence suggesting that they were pretext for disability discrimination. In fact, the McAlpine reassignment saved Mr. Greathouse from a proposed termination because of his refusal to work with Mr. Stewart. Mr. Greathouse suggests that transferring Mr. Stewart would have been a more appropriate solution. However, the court notes that it was Mr. Greathouse, not Mr. Stewart, who refused to work together. Furthermore, the court agrees with the agency's determination that Mr. Greathouse's argument amounts to a simple assertion that the Army made a "poor decision," and that "he has not shown that the decision was taken based on a discriminatory animus towards his alleged disability." *See AR I 0003 - EEOC Appeal No. 01990004*, Oct. 24, 2002, p. 4.

With regard to the non-selection complaint, Mr. Greathouse merely asserts that he was subjected to a conspiracy to prevent his advancement within the District. Lockmaster Davis' secretary claims that Lockmaster Davis and the selecting officer discussed Mr. Greathouse's

purported disability when he was being considered for the Green River job.  This evidence is insufficient to establish pretext.  The Army's primary reason for his non-selection was that Mr. Greathouse has less relevant experience than the other candidate.  The Sixth Circuit Court of Appeals has held that an employer has "discretion to choose among candidates with different but equally desirable qualifications."  *Canham v. Oberlin College*, 666 F.2d 1057, 1061 (6th Cir. 1981) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  Because Mr. Greathouse has not established that the Army's purported legitimate reasons were merely pretext, his discrimination claims must fail.[3]

### 3. The Constructive Discharge Claim

The parties dispute whether Mr. Greathouse's constructive discharge discrimination claim is cognizable in this court.  The Army maintains that he failed to exhaust his administrative remedies, claiming that Mr. Greathouse never asserted this particular claim in the previous proceedings.  Mr. Greathouse responds that the constructive discharge claim and the reassignment claim are one in the same. *See Plaintiff's Response* (DN 29), p.20. He argues that the reassignment effectively discharged him, leaving him no choice but to retire because of the burdens posed on him by the new assignment. The court does not resolve this dispute, because, even assuming *arguendo* that the claim is properly before this court, Mr. Greathouse has failed to establish the elements of his *prima facie* case. Mr. Greathouse maintains that the constructive discharge claim is indistinguishable from the reassignment claim.  As the court has already determined the Army did not discriminate against Mr. Greathouse when it reassigned him to the McAlpine job, it necessarily

---

[3] The court notes that Mr. Greathouse briefly mentions an age discrimination claim on page 20 of his response (DN 29).  There being no age discrimination claim in the complaint, nor mentioned anywhere in any other pleading, the court cannot now consider such claim.

follows that his subsequent retirement could not result from the same alleged discrimination.

 B. Reprisal

In order to establish a *prima facie* case of unlawful retaliation, Mr. Greathouse  must show that: 1) he engaged in a Title VII-protected activity; 2) his employer knew of that activity; 3) he experienced an adverse employment action; and 4) a causal connection exists between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 (6th Cir.2002) (citing *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000). Mr. Greathouse boldly states that "it is undisputed that [he] filed prior EEO complaints and that management was aware of that prior EEO activity." *Plaintiff's Response* (DN 29), p. 21. However, Mr. Greathouse fails to mention the timing of that activity and of management's subsequent knowledge; yet, timing is critical in a reprisal claim. Mr. Greathouse began the informal process of filing an EEO complaint on July 29, 1996, *after* the Green River job was readvertised.  Mr. Greathouse pinpoints the refusal to hire him for the Green River position and the subsequent readvertisement as the adverse employment actions taken against him.  As he had not begun his EEO activity at the time of these events, he cannot establish a reprisal claim with respect to his non-selection.  By definition, the Army simply could not retaliate for EEO activity that had yet to occur.

The McAlpine reassignment did occur subsequent to Mr. Greathouse's initial EEOC activity. However, Mr. Greathouse has not established the necessary causal connection to show that his reassignment and alleged constructive discharge resulted from his EEOC activity.  He presented no direct evidence demonstrating that his termination was motivated by a desire to retaliate for his filing of the EEOC complaints; likewise he provided no circumstantial evidence from which to draw the inference of a retaliatory motive. Even if Mr. Greathouse had established his *prima facie* case,

13

the burden would shift to the Army to articulate some legitimate reason for not selecting him and for later reassigning him. *See Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1066 (6th Cir. 1990).  The Army has done just that. First, the selectee for the Green River job had more relevant experience.  Second, Mr. Greathouse was reassigned to McAlpine to avoid terminating him for inability to perform his duties since he refused to share a shift with one of his co-workers at Cannelton.[4]  Since the Army met its burden, the final burden of persuasion rests with Mr. Greathouse to establish that the proffered reasons were merely pretext.  *See id.*  As previously discussed, Mr. Greathouse has provided no evidence that his lack of relevant experience and his refusal to work with Mr. Stewart were not the true causes of his non-selection and reassignment. Therefore, his reprisal claims must fail as well.

For the reasons set forth above, the court will grant the defendant's motion for summary judgment on all claims in this case.  A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record

---

[4] This same reason justifies the Army's offer to transfer Mr. Greathouse to the Markland lock and dam after his refusal to work with Mr. Stewart.

14